## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

|  |  |
|---|---|
| NATIONAL ASSOCIATION OF STATE VETERANS HOMES,<br><br>                    Plaintiff,<br><br>v.<br><br>LISA DONOR,<br><br>                    Defendant. | Civil Action No. 23-cv-02787-LWW<br><br>Dated: April 24, 2025 |

### MEMORANDUM OPINION

Before the Court are the following motions: (1) Plaintiff National Association of State Veterans Homes' ("Plaintiff" or "NASVH") Motion for Summary Judgment; and (2) Defendant Lisa Donor's ("Defendant") Motion to Strike Affidavit of Jason McArthur in Support of Plaintiff's Motion for Summary Judgment. The motions are fully briefed. Having reviewed the submitted materials, the Court finds that this matter is appropriate for resolution without oral argument. D. Md. Local R. 105.6. For the reasons set forth below, Defendant's Motion to Strike is DENIED. Plaintiff's Motion for Summary Judgment is GRANTED in part and DENIED in part.

### BACKGROUND[1]

Plaintiff is a not-for-profit organization whose mission is "to promote and enhance the quality of care and life of [v]eterans and their families in the State Veterans Homes

---

[1] In her answer to the complaint, Defendant did not confirm or deny any of the facts alleged, and instead answered: "Defendant asserts her right to remain silent, pursuant to the 5th Amendment to the U.S. Constitution as to the allegations contained within [all

across the United States of America through education, networking and advocacy."
Compl. ¶ 3. Plaintiff is organized under the laws of Nebraska with its principal place of
business in Wyoming. Id. Defendant worked as an independent contractor hired by
Plaintiff to act as its conference director for Plaintiff's annual summer conference
("Summer Conference"). Id. ¶¶ 4, 6, 7. Plaintiff and Defendant entered into a written
contract ("Contract") for Defendant's services as conference director in June 2018,
which provided for successive one year renewal terms until terminated by the parties.
Id. ¶ 7.

The 2023 Summer Conference took place in July in Austin, Texas. Id. ¶ 9. While
providing services to Plaintiff under the Contract, despite Plaintiff's requests, Defendant
did not provide detailed financial reports for the conference, a complete vendor
database, or the registration fees collected from vendors as she was contractually
obligated to do. Id. ¶¶ 8, 9. During the Summer Conference, vendors alerted Plaintiff to
"irregularities with their payments," and Plaintiff commenced an investigation. Id. ¶ 10.
The investigation found that "one vendor claimed that he received a call from
[Defendant] who apologetically stated that she spilled coffee on the vendor's check
rendering it useless and asked for a payment by credit card," despite Plaintiff's "well
known policy of never accepting payment from vendors by credit card." Id. After the
vendor made a substitute payment by credit card, the vendor's earlier payment check

_____

paragraph numbers]." Answer. As such, the Court's factual determinations derive solely
from Plaintiff's allegations. Fed. R. Civ. P. 56(e)(2).

was "deposited by [Defendant] into her own account despite her promise to destroy the damaged check." Id. Plaintiff's investigation also found that "[Defendant] invoiced the [v]endors through her husband's painting business QuickBooks account and was accepting all payments by credit card with the proceeds flowing directly into her and her husband's bank accounts" and that "[t]he few checks that she received were made payable to [Plaintiff] yet were endorsed by [Defendant] as the 'owner' and deposited into her own bank accounts." Id. ¶ 12. Plaintiff thereupon demanded that Defendant immediately provide "all [v]endor registration and sponsorship payments collected for the 2023 Summer Conference and a complete [v]endor attendance list so that it could verify the information." Id. ¶ 13. Defendant did not tender any vendor or sponsorship payments, and "created a fictitious [v]endor list that concealed the true amount of her theft." Id. Plaintiff terminated the Contract with Defendant on August 18, 2023. Id. ¶ 7. Following the termination, upon contact by Plaintiff's attorney, "[Defendant] lied, then hastily left the State of Maryland and provided a fictitious address (a UPS store) in South Carolina." Id. ¶ 14. Defendant has not tendered the payments to Plaintiff. Id. ¶ 25.

Plaintiff brings suit before the Court claiming breach of contract, breach of fiduciary duty, and conversion. See generally Compl. Defendant's answer does not confirm or deny any of the facts alleged and repeatedly states: "Defendant asserts her right to remain silent, pursuant to the 5th Amendment to the U.S. Constitution as to the allegations contained within [all paragraph numbers]." Answer. Defendant's answer then asserts the three affirmative defenses of laches, expiration of the statute of limitations,

and failure to state a cause of action on which relief can be granted. Id. Plaintiff now

moves for summary judgment. Pl.'s Mot. for Summ. J. ("Pl.'s Mot."), ECF No. 17.

## STANDARD OF REVIEW

Federal Rule of Civil Procedure 56 allows a party to move for summary judgment

when "there is no genuine dispute as to any material fact and the movant is entitled to

judgment as a matter of law." Fed. R. Civ. P. 56(a); see also Anderson v. Liberty Lobby,

Inc., 477 U.S. 242, 250 (1986); Matherly v. Andrews, 859 F.3d 264, 279 (4th Cir. 2017).

Summary judgment is proper "if the pleadings, the discovery and disclosure materials

on file, and any affidavits show that there is no genuine issue as to any material fact and

that the movant is entitled to judgment as a matter of law." Rupert v. Geren, 605 F.

Supp. 2d 705, 714 (D. Md. 2009) (citation omitted). A genuine dispute of material fact

exists where "a reasonable jury could return a verdict for the nonmoving party." Liberty

Lobby, 477 U.S. at 249.

The Court must "draw all justifiable inferences in favor of the nonmoving party,

including questions of credibility and of the weight to be accorded particular evidence."

Masson v. New Yorker Mag., Inc., 501 U.S. 496, 520 (1991) (citation omitted). If the

movant meets this burden, the burden then shifts to the nonmoving party to identify

evidence that demonstrates a genuine dispute of material fact. Matsushita Elec. Indus.

Co. v. Zenith Radio Corp., 475 U.S. 574, 585–87 (1986). A party will succeed on

summary judgment "where the record taken as a whole could not lead a rational trier of

fact to find for the non-moving party." Teamsters Joint Council No. 83 v. Centra, Inc.,

947 F.2d 115, 119 (4th Cir. 1991) (citation omitted). However, "a party cannot create a

genuine dispute of material fact through mere speculation or compilation of inferences."

Shin v. Shalala, 166 F. Supp. 2d 373, 375 (D. Md. 2001) (citation omitted). The Court

"has an affirmative obligation to prevent factually unsupported claims and defenses from

going to trial." TFFI Corp. v. Williams, No. CV 13-1809, 2016 WL 470865, at *3. (D. Md.

Feb. 8, 2016) (citation omitted).

## I.    Adverse Inferences at Summary Judgment

At issue in this case is the tension between the inferences in favor of the

nonmoving party at summary judgment and the court's discretion to draw adverse

inferences from the invocation of the Fifth Amendment of the United States Constitution

in civil actions. As a threshold matter, Plaintiff asserts that "this Court should draw [ ]

adverse inference[s]" against Defendant because she broadly "asserted her 5th

Amendment privilege against self-incrimination in [a]nswers to [i]nterrogatories,

[r]esponses to [r]equests for [p]roduction of [d]ocuments, [r]esponses to [r]equests for

[a]dmission of [f]acts, and in response to deposition questions." Pl.'s Mem. of Reasons

& Authorities in Supp. of Mot. for Summ. J. ("Pl.'s Mem.") at 3, 19–23, ECF No. 17-1.

Defendant responds that "asserting her rights under the Fifth Amendment does not

relieve the plaintiff of its burden to prove its case." Def.'s Opp. to Pl.'s Mot. for Summ. J.

with P. & A. Included ("Def.'s Resp.") at ¶ 94, ECF No. 18.

The Fifth Amendment prohibits the drawing of adverse inferences in criminal

matters, but "does not forbid adverse inferences against parties to civil actions when

they refuse to testify in response to probative evidence offered against them: the

Amendment does not preclude the inference where the privilege is claimed by a party to

Civil Action No. 23-cv-02787-LWW                                                    Page 6

a [c]ivil cause." <u>Baxter v. Palmigiano</u>, 425 U.S. 308, 318–19 (1976) (citation omitted).
Circuits are split as to whether adverse inferences from the invocation of the Fifth
Amendment are compatible with the standard applicable to a motion for summary
judgment. <u>Compare</u> <u>In re 650 Fifth Ave. & Related Props.</u>, 830 F.3d 66, 93 n.25 (2d Cir.
2016) ("[A] court may not draw negative inferences against a nonmoving party on a
summary judgment motion."), <u>with</u> <u>SEC v. Colello</u>, 139 F.3d 674, 677 (9th Cir. 1998)
("[T]he district court exercised its discretion by shifting the burden to [Defendant] ….").

　　　While the United States Court of Appeals for the Fourth Circuit has not directly
ruled on the tension between the invocation of the Fifth Amendment and the standard
applicable to a motion for summary judgment, the Court has permitted adverse
inferences at summary judgment in the face of undisputed evidence. <u>Maryland v.</u>
<u>Universal Elections, Inc.</u>, 862 F. Supp. 2d 457, 464 (D. Md. 2012), <u>aff'd on other</u>
<u>grounds</u>, 729 F.3d 370, 381 (4th Cir. 2013). In <u>SEC. v. Jacoby</u>, the Court held that "at
the summary judgment stage, an adverse inference may not alone make a case, but it
can make a case stronger." No. CV 17-3230, 2021 WL 351176, at *23 (D. Md. Feb. 2,
2021). As such, the Court will draw adverse inferences against Defendant, but only "in
the context of analyzing Plaintiff's arguments and evidence for each count." <u>TFFI Corp.</u>,
2016 WL 470865, at *4. Plaintiff still bears the burden of establishing facts sufficient to
satisfy its burden of proof at the summary judgment stage.

## DISCUSSION

## I.　　Motion to Strike Plaintiff's Affidavit and Evidence Considered

Defendant moves the Court to strike the affidavit of Jason McArthur, NASVH's treasurer, in support of Plaintiff's Motion for Summary Judgment, arguing that the affidavit "makes no showing that he is competent to testify" to payments from third parties that Defendant allegedly received and used for her own purposes because the affidavit is "based on hearsay." Def.'s Mem. of P. & A. to Mot. to Strike ("Def.'s Mot. to Strike") at ¶¶ 4(1), 4(2), 8, ECF No. 19-1.[2] Similarly, Defendant argues in her Response to Plaintiff's motion for summary judgment that Plaintiff has failed to prove the elements of the claims because Plaintiff's affidavit "makes no showing how he is competent to testify to the matters therein contained … [and that] the statements by [the treasurer] are hearsay as to payments claimed," concluding that "the [P]laintiff has not offered any admissible evidence that the Summer Conference [v]endors made payments to the [D]efendant or that the [D]efendant received such payments." Def.'s Resp. at ¶¶ 2–6 (citing Fed. R. Civ. P. 56(e)) ("Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters therein.").[3]

_____

[2] Defendant lists two consecutive paragraphs as paragraph "4." Therefore, all citations found in the first iteration of paragraph four will be cited as "4(1)" and all citations found in the second iteration of paragraph four will be cited as "4(2)."

[3] In both her argument to strike Plaintiff's affidavit for lack of competence and personal knowledge, and her argument that Plaintiff's evidence is inadmissible hearsay, Defendant cites authority as Federal Rule of Civil Procedure 56(e), "[s]upporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters therein." Def.'s Resp. at ¶ 5; Def.'s Mot. to Strike at ¶¶ 2, 4. This was the language of Federal Rule of Civil Procedure 56(e) prior to the 2010 amendments. Federal Rule of Civil Procedure 56(e) now outlines the Court's

Federal Rule of Civil Procedure 56(c)(4) provides that "[a]n affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." An affidavit will be found to "'contain sufficient information … to establish that the affiants' statements [a]re made based on personal knowledge' where the affidavit[ ] contain[s] 'a description of the affiants' job titles and duties' and there is no evidence the 'affiants were not competent to testify.'" Sanchez Carerra v. EMD Sales, 402 F. Supp. 3d 128, 141 (D. Md. 2019) (quoting Bryant v. Bell Atl. Md., Inc., 288 F.3d 124, 135 n.9 (4th Cir. 2002)).

Here, Defendant puts forth conclusory assertions that Plaintiff's submitted affidavit is inadmissible because the treasurer "makes no showing that he is competent to testify" to payments from third parties that Defendant allegedly received and used for her own purposes. Def.'s Mot. to Strike at ¶¶ 4(1), 4(2), 8. Defendant only broadly alleges that Plaintiff's affidavit is not based on personal knowledge. The sworn affidavit provides examples that show Plaintiff's treasurer had personal knowledge of the matters to which he testified, including his role at the organization, his role in the investigation against Defendant, and conversations with Defendant. Pl.'s Aff. at ¶¶ 2–5, 10–13, 16, 17, 19, 20, 21, 185. Because Defendant does not allege with any specificity why the

---

authority to act "if a party fails to properly support an assertion of fact." As over a decade has passed since Rule 56(e) was amended, the Court will construe Defendant's argued authority to be found under current Federal Rule of Civil Procedure 56(c)(2) and (c)(4).

affidavit is not sufficiently based on personal knowledge, Plaintiff's affidavit contains a

description of the affiant's job and duties, and there is no evidence that the affiant is not

competent to testify, the Court will consider it.

Federal Rule of Civil Procedure 56(c)(2) was amended in 2010 to provide that

"[a] party may object that the material cited to support or dispute a fact cannot be

presented in a form that would be admissible in evidence." Since that amendment,

courts have consistently held that the objection is not whether the evidence was

submitted in admissible form, but instead that it <u>cannot be admissible</u> at trial; and that

broad assertions of hearsay will not survive because "it is not the responsibility of the

court to sift through the documents to determine exactly what should be excluded, if

anything." <u>Williams v. Silver Spring Volunteer Fire Dep't</u>, 86 F. Supp. 3d 398, 408 (D.

Md. 2015) (citation omitted). The United States Court of Appeals for the Fourth Circuit

held that:

> "The court and the parties have great flexibility with regard to the evidence
> that may be used on a [summary judgment] proceeding." The court may
> consider materials that would be themselves admissible at trial, and the
> content or substance of otherwise inadmissible materials where the [sic]
> "the party submitting the evidence show[s] that it would be possible to put
> the information … into admissible form."

<u>Humphreys & Partners Architects, L.P. v. Lessard Design, Inc.</u>, 790 F.3d 532, 538 (4th

Cir. 2015) (citation omitted).

Defendant objects to Plaintiff's affidavit and evidence as inadmissible hearsay

and that "[P]laintiff has not offered any admissible evidence that the Summer

Conference [v]endors made payments to the [D]efendant or that the [D]efendant

received such payments." Def.'s Resp. at ¶ 9. However, Defendant does not provide an

explanation as to why the substance of any statements would be inadmissible at trial.

Such broad assertions are not sufficient to exclude evidence at summary judgment.

Williams, 86 F. Supp. 3d at 408 ("[Defendant's] vague hearsay objection is therefore not

well-taken and will be denied on this basis alone."). Federal Rule of Civil Procedure

56(c)(2) makes clear that a party may only object that the material "cannot be presented

in a form that would be admissible in evidence," or "[p]ut simply, the operative question

is whether the information submitted has a pathway to admissibility, not whether it is

admissible in its current form." Aqueche v. SVAP Pasadena Crossroads, No. CV 24-

1395, 2025 WL 870706, at *5 (D. Md. Mar. 20, 2025). Defendant makes no assertion

that any alleged statement cannot be presented in a form that would be admissible at

trial, rendering an objection pursuant to Federal Rule of Civil Procedure 56(c)(2)

inapplicable. As such, the Court will consider the evidence; and Defendant's motion to

strike Plaintiff's affidavit is denied.

## II.    Motion for Summary Judgment

The Court now turns to Plaintiff's motion for summary judgment based on claims

of breach of contract, breach of fiduciary duty, and conversion.[4]

A federal court sitting in diversity applies the choice of law rules of the jurisdiction

in which it sits. Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487, 496–97 (1941). As

---

[4] In her answer, Defendant alleged three affirmative defenses. Answer. However, because she failed to address the affirmative defenses in the response to Plaintiff's motion and has not provided any facts or evidence supporting the affirmative defenses, the Court deems them abandoned. In re Nw. Child Dev. Ctrs., Inc., 633 B.R. 145, 162–63 (Bankr. M.D.N.C. 2021) (citation omitted) ("Where a party pleads an affirmative defense in the answer but fails to contest a summary judgment motion on those

the forum state, Maryland choice of law applies here. In contract claims, Maryland

follows the doctrine of <u>lex loci contractus</u>, applying the substantive law of the place

where the contract was formed. <u>Com. Union Ins. Co. v. Porter Hayden Co.</u>, 698 A.2d

1167, 1199 (Md. 1997). Here, because the Contract was formed in Maryland, Maryland

law is applicable. Aff. of Nat'l Ass'n of State Veterans Homes in Supp. of Mot. for

Summ. J. ("Pl.'s Aff."), Ex. A, ECF No. 17-2. In tort claims, including conversion and

breach of fiduciary duty, Maryland follows the doctrine of <u>lex loci delicti</u>, applying the

substantive law of the place where any wrongful retention of a plaintiff's property and

subsequent injury occurs. <u>Fluxo-Cane Overseas Ltd. v. E.D. & F. Man. Sugar Inc.</u>, 599

F. Supp. 2d 639, 642–43 (D. Md. 2009). Because the alleged unauthorized retention of

Plaintiff's property occurred in Maryland, Maryland substantive law applies. Pl.'s Aff.,

Ex. A.

> **A.    Summary Judgment is Granted for Plaintiff's Breach of Contract Claim.**

Plaintiff first alleges that Defendant materially breached the Contract when she

"failed and refused to tender to [Plaintiff] the vendors' registration, sponsorship and

other fees collected by her for the 2023 Summer Conference." Compl. ¶ 18. In

Maryland, a plaintiff can prevail on a breach of contract claim by showing: "(1) the

existence of a contractual obligation owed by the defendant to the plaintiff; and (2) a

_____

grounds, the Court may deem those defenses abandoned."); <u>Sales v. Grant</u>, 224 F.3d
293, 296–97 (4th Cir. 2000) (finding affirmative defense abandoned where defendant
"only cursorily references" it in the answer and "thereafter fails to mention" it).

material breach of that obligation by the defendant." ClearOne Advantage, LLC v.
Kersen, 710 F. Supp. 3d 425, 432 (D. Md. 2024); Taylor v. NationsBank, N.A., 776 A.2d
645, 651 (Md. 2001).

      Here, Plaintiff provided the written agreement with Defendant, establishing that a
contract was formed for Defendant's services as an independent contractor. Compl. ¶ 4;
Pl.'s Aff., Ex. A. In the Contract, Defendant had an affirmative duty to "[i]nvoice all
companies for exhibit fees and sponsorships, payments made payable to NASVH," to
"collect[ ] the vendors' registration fees," and to "deliver[ ] to the Plaintiff the registration
fees collected for the Plaintiff." Pl.'s Aff., Ex. A; Pl.'s Mem. at 23. However, Defendant
did not tender payments to Plaintiff, and instead collected registration fees from vendors
and deposited the payments through an account in her control. Pl.'s Aff. ¶¶ 24–184.
Defendant does not dispute that this is a material breach of her obligations, nor does
she provide any evidence that a genuine dispute of material fact exists respecting such
breach. As such, the failure to tender payments from the vendors to Plaintiff constitutes
a material breach of the Contract. Therefore, the Court grants summary judgment for
Plaintiff's breach of contract claim.

### B.    Summary Judgment is Granted for Plaintiff's Breach of Fiduciary Duty Claim.

      Plaintiff alleges that "Defendant breached her fiduciary responsibility to collect
and tender [v]endor registration fees for [ ] Plaintiff." Pl.'s Mem. at 22. Plaintiff alleges
that Defendant owed Plaintiff a fiduciary duty under the Contract because Defendant
was solely responsible for invoicing vendors, collecting registration fees for the Summer
Conference, and delivering those fees to Plaintiff. Id. at 23.

Civil Action No. 23-cv-02787-LWW                                    Page 13

Maryland recognizes an independent cause of action for breach of fiduciary duty where a plaintiff demonstrates: "(1) the existence of a fiduciary relationship; (2) breach of the duty owed by the fiduciary to the beneficiary; and (3) harm to the beneficiary." Plank v. Cherneski, 231 A.3d 436, 442 (Md. 2020).

First, the Court must determine whether a fiduciary relationship exists in an agency-principal relationship created by the terms of the Contract.[5] Id. A fiduciary relationship exists "in all cases where there has been a special confidence reposed in one who in equity and good conscience is bound to act in good faith and with due regard to the interest of the one reposing the confidence." Travel Comm., Inc. v. Pan Am. World Airways, Inc., 603 A.2d 1301, 1320 (Md. 1992) (quoting Anderson v. Watson, 118 A. 569, 575 (Md. 1922)). An agency relationship may be created by written agreement or by conduct. Brooks v. Euclid Sys. Corp., 827 A.2d 887, 897 (Md. 2003). In determining the existence of an agency relationship through written agreement or conduct, "[t]he classic three factors considered … are whether: (1) [t]he agent is subject to the principal's right of control; (2) the agent has a duty to act primarily for the benefit of the principal; and (3) the agent has the power to alter the legal relations of the principal." Id. (second alteration in original) (quoting Schear v. Motel Mgmt. Corp. of Am., 487 A.2d 1240, 1248 (Md. 1985)).

---

[5] At summary judgment, the question of whether an agency relationship existed "is a question of law for the court," not a question of fact. Brooks v. Euclid Sys. Corp., 827 A.2d 887, 898 (Md. 2003).

Regarding the first factor, that the agent is subject to the principal's right of control, the Contract expressly prescribes Defendant's obligations and duties to Plaintiff, which are subject to Plaintiff's control. Id. The Contract imposes reporting requirements, including that Defendant "present [negotiated contracts] to [p]resident and [t]reasurer for approval and signature," "[p]rovide updates to [s]ummer [c]onference [c]hair for monthly executive committee calls," "[m]aintain open communication with [p]resident and [s]ummer [c]onference [c]ommittee," "monitor and report monthly to the [t]reasurer on actual results as compared to approved budget," "assist [t]reasurer in financial reports on exhibitor income and conference expense and report," "[r]eport to the [t]reasurer on an on-going basis total confirmed vendor registration and sponsor revenue compared to budget," and "[e]stablish/maintain exhibitor/vendor database." Pl.'s Aff., Ex. A. Because the Contract extends beyond administrative or perfunctory reporting requirements and requires that Defendant maintain "open communication" with Plaintiff's president, treasurer, and summer conference committee to enable the entities to approve Defendant's conduct, the Plaintiff intended to exercise control over Defendant. By agreeing to these terms, Defendant consented to that exercise of control.

Regarding the second and third factors, that the agent has a duty to act for the benefit of the principal and has the power to alter the legal relations of the principal, the Contract expressly provides that Defendant has the power to enter into contracts with third parties, and to act for the benefit of Plaintiff while doing so. Brooks, 827 A.2d at 897. The Contract requires Defendant to "[n]egotiate the best contracts on behalf of [Plaintiff]," to review all invoices for services and materials in order to ensure accuracy

prior to submitting such invoices to Plaintiff's treasurer, to "[i]nvoice all companies for exhibit fees and sponsorships, all payments made payable to NASVH," to "collect[ ] the vendors' registration fees," and to "deliver[ ] to the Plaintiff the registration fees collected for the Plaintiff." Pl.'s Aff., Ex. A (emphasis added); Pl.'s Mem. at 23. Defendant therefore had the ability to alter the legal, contractual relations of Plaintiff with vendors by invoicing exhibit fees and sponsorships and had the duty to act for the benefit of Plaintiff by negotiating the "best contracts on [its] behalf." Pl.'s Aff., Ex. A; see also Brooks, 827 A.2d at 897. With these factors met, an agency relationship was created by the Contract, and the existence of a fiduciary relationship is satisfied. Brooks, 827 A.2d at 897.

Because the written Contract created the fiduciary relationship based on an agency relationship, the Court must determine whether a fiduciary duty was breached, resulting in harm. Plank, 231 A.3d at 442. In Maryland, "an agent is subject to a duty to [her] principal to act solely for the benefit of the principal in all matters connected with [her] agency." Restatement (Second) of Agency § 387 (1958); Broadway Servs., Inc. v. Comptroller of Md., 272 A.3d 800, 812–13 (Md. 2022); Travel Comm., 602 A.2d at 1320. This fiduciary duty encompasses the duties of loyalty and fair dealing. Broadway Servs., 272 A.3d at 813. One such principle of the duties of loyalty and fair dealing includes that an agent will not commingle the property or funds of the principal with her own property or funds, without permission. See Travel Comm., 602 A.2d at 1321 (quoting Restatement (Second) of Agency § 398 ("Unless otherwise agreed, an agent receiving or holding things on behalf of the principal is subject to a duty to the principal

not to receive or deal with them so that they will appear to be his own, and not so to mingle them with [her] own things as to destroy their identity."); see also Su v. iProcess Online, Inc., No. CV 24-0061, 2024 WL 4932657, at *4 (D. Md. Dec. 2, 2024) (finding that there was a breach of the duty of loyalty where a fiduciary company commingled employee benefit plan contributions with its business operating account and general assets, benefiting the fiduciary company).

Here, Defendant owed Plaintiff the duty of loyalty and fair dealing to place the interests of Plaintiff ahead of her own and to promote the interests of Plaintiff within the scope of her contractual duties in good faith. Weichert Co. of Md. v. Faust, 19 A.3d 393, 400 (Md. 2011). Defendant breached the duty of loyalty by having the funds transmitted to her personal account, as the Contract expressly states that Defendant was to "[i]nvoice all companies for exhibit fees and sponsorships, payments made payable to NASVH," to "collect[ ] the vendors' registration fees," and to "deliver[ ] to the Plaintiff the registration fees collected for the Plaintiff." Pl.'s Aff., Ex. A; Pl.'s Mem. at 23. By directing vendor payments into her own account, rather than invoicing vendors with all payments made payable to Plaintiff, Defendant did not act for the benefit of Plaintiff. Further, by impermissibly comingling the payments meant for Plaintiff with her own funds, and without tendering such payments to Plaintiff in accordance with the Contract (either directly after receiving the funds or any time thereafter), Defendant breached her fiduciary duties of loyalty and fair dealing. See Travel Comm., 603 A.2d at 1320; see also Restatement (Second) of Agency § 398. This breach of the duties of loyalty and fair dealing materially harmed Plaintiff because Defendant wrongfully benefitted herself with

possession of $133,400 of Plaintiff's funds. Pl.'s Mem. at 3, ¶¶ 19–173. Plaintiff's claim that Defendant breached her fiduciary duty is therefore granted.

### C.    Summary Judgment is Denied for Plaintiff's Conversion Claim.

Plaintiff finally alleges a claim of conversion because Defendant "has taken registration, sponsorship and other payments collected from [v]endors on behalf of NASVH and deposited the same into her own bank accounts." Compl. ¶ 21. Maryland defines conversion as "any distinct act of ownership or dominion exerted by one person over the personal property of another in denial of his right or inconsistent with it." Darcars Motors of Silver Spring, Inc. v. Borzym, 841 A.2d 828, 835 (Md. 2004). The general rule of conversion is that "monies are intangible and, therefore, not subject to a claim for conversion." Due Forni LLC v. Euro Rest. Sols., Inc., No. CV 13-3861, 2014 WL 2916873, at *5 (D. Md. June 25, 2014). An exception exists where "a plaintiff can allege that the defendant converted specific segregated or identifiable funds." Id.

To meet this exception, a plaintiff "must allege the separateness of the funds because 'when funds are co-mingled, the monies lose their "separateness" and, therefore, are not subject to a claim of conversion.'" Id. (citation omitted). If a plaintiff does not allege the separateness of the funds, they do not meet the exception, and the claim of conversion fails. Id.; see also Nash v. Montgomery Cnty., No. CV 20-1138, 2021 WL 1222874, at *8 (D. Md. Mar. 31, 2021) ("Although Plaintiff alleges the specific amount of funds that was allegedly improperly withheld … and states that 'these funds were specifically identifiable,' … Plaintiff does not allege any facts suggesting that these funds have been held in a segregated account or otherwise held apart…. Accordingly,

her conversion claim fails."); G&D Furniture Holdings, Inc. v. SunTrust Bank, No. CV 16-2020, 2016 WL 7441607, at *7 (D. Md. Dec. 22, 2016) (dismissing conversion claim where the plaintiff "asserted the intentional withdrawal of, and failure to return, a specific dollar amount," but not "that the allegedly converted funds were segregated, identifiable, or kept separate in any way"); Hernandez v. Lloyd, No. CV 23-1016, 2024 WL 1329297, at *22 (D. Md. Mar. 28, 2024) ("Essentially, courts applying Maryland law have distinguished between claims seeking return of the actual, identical money, and those seeking a specific amount of money.").

Here, Plaintiff alleges that Defendant "exercised ownership over the vendor payments by depositing them into her own bank accounts and refusing to tender them to NASVH." Compl. ¶ 23. In support, Plaintiff supplemented its motion for summary judgment with affidavits from twenty-eight vendors, showing the transfer of vendor payments to accounts in Defendant's name, making the funds identifiable. Pl.'s Supp. to Mot. for Summ. J. and Attached Affs., ECF No. 20–20-28. In its own motion, Plaintiff explains that "[t]ypically, money cannot be the subject of a conversion unless, as in this case, the funds taken are clearly identifiable." Pl.'s Mem. at 21, n.1. However, Plaintiff does not "allege any facts suggesting that these funds have been held in a segregated account or otherwise held apart." Nash, WL 1222874, at *8. Because Plaintiff does not allege the separateness of the funds subject to conversion, the claim does not meet the exception to the rule that "monies are intangible and, therefore, not subject to a claim for conversion." Due Forni, WL 2916873, at *5. Accordingly, the Court does not grant summary judgment for Plaintiff's conversion claim.

    **D.**    **Plaintiff's Request for Damages is Limited to Compensatory Damages.**

The final issue before the Court is Plaintiff's requested relief of compensatory and punitive damages.

Pursuant to Maryland law, once a defendant has breached her fiduciary duty, the remedy arises from the source of the duty. <u>Plank</u>, 231 A.3d at 466–68. Additionally, the remedy for breach of fiduciary duty is the same as the remedy for breach of contract when "breaches of fiduciary duty give[ ] rise to a breach of contract claim." <u>Council of Unit Owners of 100 Harborview Drive Condo.</u>, 584 B.R. 639, 656 (Bankr. Md. 2018). Here, because the fiduciary duty was created and expressly controlled by the Contract, the source of the fiduciary duty is the Contract. <u>Plank</u>, 231 A.3d at 466–68. Additionally, the breach of the duty of loyalty and fiduciary duty gave rise to the breach of the Contract. <u>See</u> <u>Council of Unit Owners of 100 Harborview Drive Condo.</u>, 584 B.R. at 656. Therefore, the remedy for the breach of the fiduciary duty will be the remedy for the breach of contract.

In examining the proper remedy for breach of contract, "punitive damages are not available in a pure action for breach of contract, even if the breach is malicious," but "punitive damages may be awarded in a breach of contract case if a 'tort arises out of the contractual relationship.'" <u>nTech Sols., Inc. v. Meta Dimensions, Inc.</u>, No. CV 21-0673, 2023 WL 5671619, at *7 (D. Md. Sept. 1, 2023) (citation omitted). However, the party must specifically plead the tort that arose out of the contractual relationship, and summary judgment must be granted for that claim, for punitive damages to be awarded. <u>Id</u>. (finding that plaintiff was entitled to punitive damages because the court additionally

granted summary judgment for plaintiff's pleaded claims of fraudulent, intentional misrepresentation, which arose out of the contractual relationship); see also Wiley v. Office Superstore E., LLC, No. CV 17-2187, 2017 WL 6547734, at *2 (D. Md. Dec. 20, 2017) (finding that plaintiff was not entitled to punitive damages for a breach of contract claim because he did not plead a tort or show defendant acted with malice); VF Corp. v. Wrexham Aviation Corp., 715 A.2d 188, 192 n.2 (1998) (citation omitted) ("Since, under Maryland law, punitive damages are allowable only in a tort action and only when there is an award of compensatory damages based on that tort, our reversal of the judgment for compensatory damages under the tort count in this case will automatically require a reversal of the punitive damages award.").

Because summary judgment is not granted for Plaintiff's conversion tort claim, Plaintiff is not entitled to punitive damages at summary judgment. Instead, in an action for breach of contract and breach of fiduciary duty where the duty arose from the contract, Maryland follows the common law rule of Hadley v. Baxendale, 156 Eng. Rep. 145 (1854), that "the non-breaching party is entitled to compensatory damages, which are the natural and proximate consequence of the breach." Munday v. Waste Mgmt. of N. Am., Inc., 997 F. Supp. 681, 685 (D. Md. 1998). The sum of the damages is "the sum which would place the injured party in the same position as if the contract had been performed." Id.; Beard v. S/E Joint Venture, 581 A.2d 1275, 1278 (1990). Here, Defendant wrongfully kept $133,400 in registration fees from vendors. Pl.'s Mem. at 3, ¶¶ 19–173. Therefore, to place Plaintiff in the same position it would have been without

the breaches of contract and fiduciary duty, Plaintiff is awarded $133,400 in

compensatory damages.

## CONCLUSION

For the foregoing reasons, Defendant's Motion to Strike is **DENIED**. Plaintiff's

Motion for Summary Judgment is **GRANTED** in part and **DENIED** in part. Summary

judgment in favor of Plaintiff will be granted as to Count I, breach of contract, and Count

III, breach of fiduciary duty, and judgment under Count I and Count III will be entered in

favor of Plaintiff in the amount of $133,400. Plaintiff's motion for summary judgment will

not be granted as to Count II, conversion. An order will follow.


/s/      Lisa W. Wang
Judge

Dated: April 24, 2025
           Greenbelt, Maryland